That's fine. Just at the outset, which has nothing to do with any legal matter here, what made you decide to press it? I mean, in one sense, you know what the practical concerns are. A judge says, okay, he said some nice things, and then he'd prefer you not put it in print. So what sort of goes through your mind when you're saying, hmm, do I take this the next step? Do I just go with it? Sure. I researched it before we put anything on the website, and I wanted to make sure that there wasn't a violation of the RPC, and I also looked into the question of whether or not I thought it was constitutionally protected. There is no state that I'm aware of other than New Jersey that bars quoting from a judicial opinion regarding an attorney's abilities in attorney advertising. So I simply looked at the line of Supreme Court cases that we've that it was constitutionally permissible, that it was not constitutionally permissible to impose a flat ban. And given that, I wanted to include the quotations because, quite frankly, I think they're of service to people who are potential consumers. If I was a potential consumer and looking for a lawyer, I would want to know what judges thought of that lawyer, judges before whom that lawyer had appeared. So it's an endorsement? No, I don't think it's an impermissible judicial endorsement, Judge Greenaway. I think an endorsement would be if the judge says, I recommend... No, forget about whether it's permissible or impermissible. In the, let's say, the common parlance or usage of endorsement for a moment, it sounds as if the effect that you want on a consumer is, this judge has concluded that he's a good lawyer. Is that an endorsement or do you interpret that as merely an even-handed judicial assessment? I don't think it's an endorsement. I would, admittedly, the word endorsement is not defined anywhere in this rule, but I think an endorsement would be if a judge said, I recommend that you hire this person and here's why. I think that if a judge simply gives an evaluation of the performance of an attorney who's appeared before the judge, that's simply a fact. How does a layperson line draw on something like that? If a layperson saw a quote, say, from Justice Alito, formerly of our court, that said, Mr. Dwyer, in representing his client, is among the best that I've seen, hard to say that's not an endorsement, right? Well, if the judge is saying that in the context of the judge's evaluation... In the same context as here. Yeah, no, then I would not call that an endorsement. I think what I would call an endorsement would be if, for example, Judge Fuentes said, you know what, Dwyer, I think you're a really great attorney, so if it's okay with you, I'm going to take out an advertisement in the New Jersey Law Journal to tell everybody that they should hire you. I think that would be a judicial endorsement. I think that's pretty much... Endorsement being then the equivalent of a testimonial? Yes, although a lot of attorneys use testimonials from clients in peculiar ways, but yes. I think attorneys use testimonials where they simply have a letter from a client, they don't really tell the client anything about what they're using the letter for, and they post portions of the letter. Is Guideline 3 a restriction on speech, or is it a disclosure requirement? Well, obviously our position is it's a restriction on speech, because regardless of how much information you provide, whether you provide a disclaimer, whether you provide greater context, whether you provide a link to the full opinion, the first sentence of Guideline 3 flatly prohibits you from quoting or excerpting from a judicial opinion. Suppose you did this, right on this point. Here's what you put on your website, I'm supposing, okay? Sure, sure, sure. Judge Fuentes wrote the following assessment of my abilities in an opinion written earlier this year. See for yourself, and then you provide the opinion. Does that scenario curtail your First Amendment rights? Because clearly the quote's there, you've set in your own preamble that it's probably going to be positive. What's the problem with that scenario? Right, you're saying if that was the requirement, if that was the state's requirement? No, no, no. I'm asking you, is that a curtailment of your rights, that scenario? Because I think what you were going with was there's a point at which you can't use, say, the great quote and then the opinion. So I'm suggesting, is there an interim position in which the full opinion's required that serves both purposes, and I think that might help us in our analysis. Sure. What I'm trying to make sure I understand, Judge Greenaway, is that as I understand you're saying, if the state required something, would it be a curtailment of my First Amendment rights? Because I don't know how it could be a curtailment of my First Amendment rights if the state didn't require it. No, no. Well, obviously the state is where it's at, right? And the question is, what are you curtailed from doing? You say having to use the full opinion infringes on my First Amendment rights. No, that's not what I'm saying. What I'm saying is that prohibiting me from quoting infringes on my First Amendment rights. If I'm allowed to... You don't mind posting the whole opinion as long as you also get to excerpt it, correct? That's exactly correct, Judge Hardiman, and let me just say... Because you know that people aren't going to read the whole opinion. Who would? Let me say two things about that, Judge Hardiman. I don't know whether or not people will read the whole opinion or not, but one thing is the practical question. If that had been what Guideline 3 came out to say, and frankly, during the rulemaking process, that's what I encouraged the state to try to do. If that had been what Guideline 3 came out to say, no, I would not be standing here. Now, do I agree as a matter of First Amendment jurisprudence that it's invariably the case that if you require an attorney to link to the full opinion before the attorney can use the quotation for the judicial opinion? I'm not 100% sure that that's actually permissible under the First Amendment. I can think of various scenarios. So, for example, if the attorney had a brochure, would the attorney have to staple the 50-page opinion? Well, it would be in an abundance of caution to make sure that context was provided. I mean, I think a good policy argument could be made, could it not, that it's important to link to the full text, because after the person reads the salutary compliment that you want the person to read, it's nice to have the ability for them to contextualize it if they so choose, right? So you're going to hate this answer, but I think it depends on context. And what I mean by that is if you look, for example, at the Court's decision in Ibn Is, where the issue was about how much of a disclaimer would you need to provide about the fact that you want to list that you're a certified financial planner or a CFP. And one of the things that the Court's opinion pointed out is, well, are we going to thereby prevent somebody from listing the fact that they're a CFP on their business card, on their letterhead, on a yellow page advertising listing? It depends on the context. In some contexts, I don't think the link to the full opinion would be unduly burdensome, which is the standard under Zowder if we're talking about a disclosure requirement. In the context of a website, you're right. I don't think that that's unduly burdensome. I guess I'm starting from the assumption, and feel free to push back on it. I think you seem to want to. But I'm starting from the assumption that by requiring more speech, i.e. a hyperlink to the full opinion, it's hard to call that a speech restriction. It's not. I don't think that that is a speech restriction. I just think that even under that standard of Zowder, there can be circumstances where it could be unduly burdensome. In the instance of a website, no. But what if the attorney... If you had to take out a full page ad on the yellow pages, that could be prohibitively expensive or something. Right. Or what if the attorney wanted... I don't do anything like this, but what if the attorney wanted to do a radio spot? Are they going to have to... I was going to say radio or TV. Yeah. They're going to have to spend 20 minutes reading the opinion as part of their radio spot. So I think it's contextual. If they do it in Gregorian chant, they may be able to get an audience. I don't know. If anyone knew what Gregorian chant was. Unfortunately, I didn't. I grew up with it. I do as well, but that's not the case. We've got agreement on one thing. I don't know if that helps either. Now, this is an as-applied challenge, right? I didn't see anything in your briefing to really carry any sort of facial attack, right? I think what this is, this is very similar to the pre-enforcement challenge that you'd see in Eden versus, Enfield versus Fane, where they barred the CPA from in-person solicitation. The CPA had never done an in-person solicitation. What this is not like, this is not like the situation, for example, in Bates, where people have had disciplinary charges brought against them and now the question is, can those disciplinary charges be upheld under the First Amendment? There's never been a disciplinary charge brought, notwithstanding the fact that the quotes were on the website, with knowledge of the committee for four years. I'm sorry, Judge Greenway, go ahead. You look like you'd like to say something. Yeah, obviously you know me, because I was about to jump into something. Well, let me ask you this question. You would concede that any one of the three statements could be thought, in the context in which they're read, to be inherently misleading to a consumer, or no? Inherently misleading? No, I wouldn't agree with that. Would you? I would agree that there are certainly, but the potential that it could be misled. But I think three things, in response to that specific question. One is that under RPC 7.1 and 7.2, the quotes were on the website with full knowledge of the committee for four years, and the committee enforces those rules, and those rules prohibit false or misleading advertising about the attorney's abilities, and the committee didn't do anything. The second thing is that, again, they were on there for four years, and this is in the record, the site gets thousands of visits a year, especially on the homepage, and there's not a shred of evidence in this case that anybody said they were misled, and it's my personal view that you look at these quotes, they just are a judge evaluating an attorney who appeared before that judge. Now, if I'm dead wrong about that, though, Judge Greenaway, I don't think it changes anything about this case, because this case is not about whether discipline that was imposed on me can be upheld under the First Amendment. It's about whether or not this guideline is constitutional or not. As applied to you? As applied to this context? Well, as applied to the context of, you know, in other words, in a pre-enforcement challenge, Judge Ambrose, I'm entitled to say, look, I'm chilled. I had to take this off of my website. I'm not able to put any version of the quote on the website, because the person who's the Rule 30b-6 witness for the state has said that if I put the quote with a disclaimer, a link to the full opinion, it's still a violation. I don't have to wait until an enforcement proceeding is brought against me in order to have standing. So I do think I have standing to challenge it and not just look at the question of the individual quotes that were on my website, which aren't on my website anymore. I don't want to stop anybody from asking a question. I was just going to point out one thing that struck me, which is, you know, ironically, I think the best evidence about the unconstitutionality of this rule is the trial court's opinion itself. Because when you go look at the trial court opinion, it begins with the three quotes, exactly the way they are on my website. And all that Judge Hoxberg says about the three quotes is, these are judicial opinions from a fee application about an attorney. And yet there's no way that Judge Hoxberg was using those quotes in a misleading fashion. There's no way that a person of ordinary intelligence reading her opinion would come away from it and think these were impermissible judicial endorsements. So if her opinion is not misleading, and I don't think it is, in terms of the use of the quotes, then the fact is... But potentially misleading, didn't you? Yeah, and isn't that interesting? Because, you know, what the case law relied upon by the state says is that if something is merely potentially misleading, all you get is a disclosure requirement, not a ban. So even under the case law that they want to rely on, such as Zauer or Novitz... Although I know what the state was now saying, or the courts are saying, that it's, quote, inherently misleading somehow. We can talk with Ms. Scott about that. I could not hear that, Judge. I thought what they're now saying is that what you had was inherently misleading, and I said we can talk with Ms. Scott about that. Yeah, yeah. It's not the position that the trial court took. I think, really, the state's only defense in this case is their argument that this is not a restriction on speech. If they lose that argument, I don't see how they can win this case. Even if they win that argument, do they... Even if they win that argument, I think it's, as I said in my brief, I think it's a much closer question constitutionally, much closer question... Well, I mean, the question under Zauderer becomes, and Zauderer has said, that it must be reasonably related to the state's interest-preventing deception of consumers, one, and not unjustified or unduly burdensome. Correct. And the question I thought there might be, you would say that this is unduly burdensome, especially when there's less restrictive alternatives that can be used. For example, a statement that you would quote this and just drop a footnote. This is not an endorsement. Right. Right. I agree with you. All I'm doing is being candid with the court that that's a closer constitutional question than it would be if it's understood to be a restriction under the central HUDSA case. I do apologize for going over. No problem. No problem. In fact, I think you're going to be over for a little while longer. Okay. So here's a question for you. Judge Ambrose and a lot of my colleagues, when they're presiding, often say at the end of an argument, this was a well-briefed and well-argued case. And if he says that today, I won't put it on my website. Well, I'm sure he's excited about that. I wanted to take it one step further, though. I just work here. Would that quote fall within the parameters of Guideline 3? Oh, gosh, yes. Sure. You know, remember, some of these opinions are oral. And so, you know, I don't know how the state could say it would be okay for an attorney to put on his website a personal letter from the judge saying, you know, gee, Andy, after that trial, I just want to let you know you're the greatest lawyer ever. I could put that on my website, but I can't quote from a judicial opinion where I'm awarded fees? If that's the state's opinion, they flunk under Rubin v. Coors, and that's why I cited that case to the court. So let's assume that statement or some permutation of it was given. You put it up on your website. Wouldn't an unwitting consumer read that and consider that? I'm going to sort of end where we started. Wouldn't they consider that an endorsement? I don't know whether they would or not. I think it's potentially true. But I also think that the correct answer to that would be a disclosure requirement like a disclaimer, as Judge Ambrose was suggesting, you know, a footnote, something along those lines. Thank you. Thank you. I'll get you back on rebuttal. Ms. Scott? Thank you. Good afternoon, Your Honors, Judge Ambrose, Judge Hartman, and Judge Greenaway. May it please the Court. Deputy Attorney General Susan Scott on behalf of the Academy. Let me start at the outset. How are judicial quotes in connection with, in this case, a fee application inherently misleading? I think they're inherently misleading because it's a partial comment taken out of context, which gives people the impression that it's a judicial endorsement. But what's the context in which a layperson would read an 18-page, or whatever the other ones are, opinion? I mean, if I were a layperson, if I gave my sister who has, you know, more degrees than I do, one of these opinions and said, read it, other than falling asleep probably and telling me that it's boring, what conclusion do you say, in luck, she'd come to? I don't get the conclusion that she'd say, wow, this is Judge Wertheimer or Judge Fuentes or whomever thinks Dwyer's the best thing since Swiss cheese. The inherently misleading part I'm not getting, and I don't see how the entire opinion gets over that. Why providing it to a layperson would get over that problem? It's misleading because statements by an attorney or firm saying that their services are better than someone else's, comparative statements, are prohibited by RPC 7.1a. But it's a factual statement by a judicial officer, right? I mean, it's certainly a view. It's tangible to put into an opinion. In the context of a rubric that a judge needs to apply to a particular application, a fee application, for instance. But telling a layperson, see, but your solution doesn't tell a layperson. Take into account the context in which this came up. Your response is, read the whole opinion. I mean, they might say, oh, it's a fee application. Well, you know, I'd have to say 99.999, infinitum, right? Would read it and say, first of all, I'm not quite sure what a fee application is. I think I know what it is. But how is providing the opinion going to be the light bulb for the layperson? That's what I'm not sure. How is it going to be inherently misleading for this layperson? Inherently misleading. Inherently misleading, I think I have two questions. I'm not sure. Judge Greenaway's question was, how is providing the opinion going to alleviate the misleading aspect of the quotation? And I think that it alleviates it because it explains. The judge often says, I am required to consider the attorney's abilities in this case and the other factors of that test. And so then they go through that and they explain that they're making those findings because they have to make those findings. That they're not, they're just opinions of the attorney's ability. So the full opinion gives context. Yes. All right. But he's willing to post the full opinion. He just wants to excerpt it here and there. What's wrong with that? That's more speech, not less speech. Because you're taking the quotation out of context. How is it out of context when the entire body is there? Because you're then relying on the consumer to have the wherewithal to click the link and read the opinion and find out what it has to do with. Well, but you're the side that you just said you want the consumer to read the whole opinion. I think if the opinion's presented and then they have to figure out, like, they're reading it, okay, this is what it means. But if you're taking it out of context, you're giving it a meaning that it didn't have before. Can I just stop right there?  Let me just read Judge Fuente's statement. Mr. Dwyer is, I think, an exceptional lawyer, one of the most exceptional lawyers I've had the pleasure of hearing before me. He is tenacious, professional in his presentation to the court, a bit too exuberant at times, certainly passionate about his position, but no one can fault his zeal and his loyalty to his client. Well, what's misleading about that? It's the appearance of judicial impropriety. It's misleading because it's giving the impression. That has nothing to do with misleading. If it was the appearance of judicial impropriety, Judge Fuente wouldn't have said it. He said it in the context of a rubric that he has to follow in order to make his determinations. But taken out of context, it's misleading. It gives the appearance that this is the judge's opinion of this. Now, say my attorney is, I have a case against someone else. And I'm looking up my adversary's attorney online, and they have this up there. And our judge is Judge Fuentes. And I'm like, well, Judge Fuentes loves their attorney. I'm not going to get a fair day in court. It's misleading. It makes the consumer and anyone. If I put out an opinion on just about anything, it can be quoted all over the place, can't it? I mean, it can be quoted in law review articles. It can be quoted in symposia. It can be quoted in court. Why is it that something I say about an attorney, let's say in a pro bono case, having done a good job, can't be quoted by that attorney in attorney advertising, commercial speech? Because it's advertisement. You're using it. But advertising isn't bad. I mean, America is built on advertising. Absolutely. But you're using it to have the consumer believe that this judge prefers you over other attorneys. What about this statement is an endorsement? We were talking to Mr. Dwyer about this endorsement issue. It seems that in order for us to come to the conclusion that you'd like us to on inherently misleading, we have to think it's an endorsement. Because if we don't think it's an endorsement, then I think we're left with the words, and the words could be deemed to be a unbiased assessment of one judge related to the performance of a lawyer. So what is there about this that makes it as you've argued? Because when you take it out of context, it doesn't appear any longer to be an unbiased judge making a determination that he has to make or she has to make in a particular way. Why is it an endorsement? That's where we are. It seems to me, obviously my judicial colleagues will disagree or agree, but we have inherently misleading. And the reason that you think it's inherently misleading is because you think it's an endorsement. You believe that a consumer will read this and believe this is an endorsement. And my question to you is, why would a consumer jump to that conclusion? There's nothing about this statement that says, I would hire Dwyer. There's nothing about this that said, in the past, I've referred people to Dwyer, or the other ways in which in our profession we think about endorsements. So why is it here so clear that you would lead to the conclusion or you would say that there's an inference that it's inherently misleading? If we could take the instances, the examples in this particular case, there was not even a cite to a case. There was nothing at all. There was these quotes about Mr. Dwyer's abilities attributed to a judge. Without any context at all, I wouldn't even know why the judge said those things about them, why he was in the upper echelon of employment law. But what about this statement is an endorsement, right? If a practicing lawyer said, Judge Ambrose is one of the best I've ever appeared before, Judge Hardiman is one of the best I've ever appeared before, is that an endorsement? It's an assessment. Why would it be flipped? Clearly, if someone was saying that about a judge, you'd say that's an assessment. But now a judge is saying that about a lawyer, that's an endorsement. Because when it's used in advertising, it's used for that attorney to get business. And using that statement, saying Mr. Dwyer's in the upper echelon of employment law. Well, you know, cases are down a little bit. I could use them in business. I'm just kidding. I think clearly you're on solid footing that with all respect to Mr. Dwyer, I don't think it was ily moisonary impetus exclusively that he put this on the website. It's to distinguish him from his competitors, right? Because probably many of his competitors didn't receive the same praise in their feed petitions that he received. So you're on solid footing there about the advertising aspect, but I still haven't heard you say anything to indicate that there's anything misleading about this inherently. Now, you make the point that he just put these up there without any context. Now, again, I think you're on stronger footing trying to argue against that. But don't you have to argue against his willingness to post the entire opinion and also include the excerpt? I mean, how do you get around? You say it's out of context. To me, it seems perfectly in context. If I turn on the 6 o'clock news and they show the game-winning goal in the hockey game, that's perfectly in context, right? They're not pretending that it was some other baseball game. They're showing me an excerpt. They're showing me a piece of it. And the reasonable observer knows, oh, well, that was the last play of the game. Wouldn't the reasonable observer readily conclude that Mr. Dwyer's excerpt is an excerpt from the opinion that's right next to it? If the opinion's right next to it? Yeah. I'm trying to – your position, as I understand it, correct me if I'm wrong, is he must post the opinion and only the opinion, and he cannot put more speech on by excerpting out portions of that very opinion. Is that right? More speech in that take the excerpt and put it above the opinion? Sure, above it, below it, next to it. Here's what Judge X said about me in Smith v. Jones quotation, and here's a link to the opinion. You argue that's not permissible. I believe that a link to the opinion is not permissible because it's taking that particular statement out of context. How is that out of context? Because you're putting it on the website for the consumer to believe that that judge thinks that this attorney You're also putting it on the website with the full opinion in that particular instance. I'm sorry? You're also putting it on the website with the full opinion in that particular instance for the person to look at if they wish to do so. Zotterer, let's just assume for the moment this is a disclosure requirement. Yes. And it's not a restriction on speech. And Zotterer says that disclosure requirements are constitutional if they are reasonably related to the state's interest in preventing deception and are not unjustified or unduly burdensome. Why not just simply say he can put the quote and then put this is not an endorsement underneath, a little asterisk. What's wrong with that? Because I don't think the disclaimer could cure the improper comparative aspect of it. An attorney is not permitted under RPC 7.1A.3 to have any sort of comparative statement on there comparing an attorney's abilities with another's. Let's get back to the basics. Judge Wertheimer had a concern at the outset. They didn't want his words used in connection with this fee application because he perceived that some might think of it as an endorsement. So what if he were to say, Mr. Dwyer, this is not intended to be an endorsement by the speaker, the judge. Period. That takes it out. Therefore, it is not inherently misleading, and one could make a darn good argument that it's not misleading in any context because the idea is if you're going to tell him what he can and cannot do in order to make sure that there is no deception, then you have to do it in a way that isn't burdening him. For example, he can't do a TV spot, and you see TV spots every night on television. He can't do a radio spot. You see those all the time or hear those all the time on the radio. He can't do a, it would be tough to do a brochure if it's a lengthy opinion, and you're prohibiting him from doing any of those things, and all Judge Wertheimer wants, I just want the world to know I ain't endorsing this guy. He happened to do a good job. I acknowledge he did a good job. It's not an endorsement. What's wrong with that? I don't think the disclaimer saying this is not an endorsement will alleviate the impact it has on the consumer. What evidence? You have a burden. Right. You can't jump to conclusions and say it's inherent. What evidence did you put in that this is misleading, deceptively misleading to the public? Under Zutter you don't need evidence if it has a potential to mislead. Well, what about under, you've got a Báñez, and the point is there was a, in a Báñez you had to put more words than the person wanted to put as to whether this person was a CFP, a financial planner, and the court said no, that's burdensome. So isn't burdensome still part of the test? Burdensome is part of it. And so why can't you do something that's less burdensome than what you're doing? Because the test under Zutter is not the least restrictive means. Well, Zutter was a case, what were the facts in Zutter? Where the person said that you won't have to pay any costs? It was a, yes, a disclosure. And that was misleading? Right. So here, the person said he's a darn good lawyer, sometimes a little exuberant, sometimes a little over the top, et cetera, but he's a darn good lawyer. What survey do you have that says that that's misleading, or could be misleading? Or at least some significant portion of the public is misleading? Our argument is you do not need to have any evidence when the possibility of deception is self-evident. What is self-evident? I'm asking that that's my point. We're having trouble finding it in any respect, never mind self-evident. That's why we're back here, inherently misleading. Right. So it's too complementary at the end of the day. That's the bottom line. From the state's perspective, these judges complimenting these lawyers are giving this lawyer an unfair advantage against the competition. If he uses it in his attorney advertising, yes. I mean, if that's the finding they want. And the question I just asked, the answer you just gave, I think, has nothing to do with truth or falsity, right? Right. Whether what has to do with truth or falsity. The judge's finding? I'm positing Mr. Dwyer having a huge advantage over practitioners with whom he might be competing for business in New Jersey. In light of these very complementary things that judges have said about him, that puts him on a privileged position, as opposed to other lawyers who have had negative things or nothing said about them, right? And you agreed with that, right? I don't believe that that's the intent behind the rule. The intent is not because he'll have an unfair advantage in obtaining clients. It's that the clients won't understand the context that these judges made these determinations. What did Judge Wertheimer want the world to know? He wanted to make sure that the world didn't know it was an endorsement. And I just said to you, what if you put a footnote that says, hey folks, this is not an endorsement? Because I don't think that alleviates the impact it has. It has such a substantial impact on someone reading that, that the judge said that he is. You know what, if somebody's a good lawyer, what's wrong with saying they're a good lawyer? Those were determinations made in that case. That very judge could have made a different determination in a different case Mr. Dwyer handled. So it doesn't necessarily reflect the judge's, and it shouldn't reflect the judge's opinion as to whether Mr. Dwyer is a good attorney or not. It reflects his findings in that particular case, in that particular context. Everything a judge says is in a public context, right? Yes. So whether a judge comes to one conclusion in one case or another conclusion in another case isn't important, right? Because in no context do we put anyone under the microscope and say you must disclose every person's assessment in every context everywhere you go, right? That's not what advertisers say. A hundred things have happened to our consumers. Here's two really good things. We'll put that forward, right? But I want to come back to this question that Judge Ambrose put to you. The reasonable relationship is, I think, a problem here for you. Why, and it comes back to the whole context issue, why is putting the entire opinion, requiring the entire opinion and nothing else reasonably related to the state's interest? Because the New Jersey Supreme Court has a stringent view of attorney advertising, and it has vested in it from the New Jersey State Constitution unfettered discretion to regulate the profession of law. And it was the Supreme Court that decided that the use of the judicial quotes and excerpts must be presented in their full context to prevent the deception of customers. Why did you need this guideline? You've got a state ethics rule that says you can't have misleading statements made by attorneys. Why do you need this guideline three in light of that rule that already existed? Because there wasn't an advertising guideline, and now there is. It wasn't addressed through the attorney advertising. It was addressed through ethics. Let's just think logically. You just said what was said here is inherently misleading. Yes. There is already an ethics provision in the court system in New Jersey that you cannot have misleading statements. Yes. Therefore, why do you need anything else beyond that if you deem this to be a misleading statement? Because the Committee on Attorney Advertising, after becoming aware of what Mr. Dwyer was doing, thought that it was necessary that they also needed an attorney advertising guideline. They recommended the adoption based upon the information that they learned, the postings on his website. Let me ask you the same question that I asked Mr. Dwyer. Suppose he wrote this as a preamble. Judge Fuentes wrote the following assessment of my abilities in an opinion written earlier this year, see for yourself. Is that problematic? And then linked to the opinion? Yes. These case-by-case determinations are for the consideration of the Committee of Attorney Advertising, but as I understand it, that should be permissible. Because he's not taking any quote, he's not taking any excerpt out of context. He's not putting it out there. He's giving his own little description of, this judge assessed my abilities in this particular case. Go take a look at it. All right. Suppose he used an adjective before assessment, and he said, Judge Fuentes wrote the following phenomenal assessment of my abilities. Or wrote the following assessment of my abilities, which in my humble opinion is phenomenal. I think both of those are fine, because it's clear that it's his opinion that it's phenomenal. It's his opinion that, especially where he says, in my opinion it's phenomenal. Again, he's not taking the quotation or the excerpt out of the opinion. He's giving his opinion on the excerpt. No, keep going. He's giving a little summary paragraph explaining, hey, this judge gave this assessment of my abilities. I think it's phenomenal. Go see the opinion. And then you go look at the opinion, and then you can see what the judge said. And if he said, in the attached opinion at page 17, paragraph 3, Judge Wertheimer complimented me. Take a look. That's okay, too. You've got to say yes, based on what you just said. See, your hesitation tells me that my instinct about this was right, which is New Jersey wants to do whatever it can to make sure the consumer doesn't get to see the complimentary remarks. You want it buried in this 20-page transcript. One of these wasn't even a written opinion. It was an oral transcript. So you're hoping by forcing Mr. Dwyer to put war and peace out there, or better yet, the brothers Karamazov, that they won't get to hear the speech at the end that everyone wants to read, because they won't get there. Judge Hardiman, I apologize, and please don't misunderstand my hesitation. My hesitation is because this is going to be used later to say, D.H.E. Susan Scott said this was okay. That's my hesitation. So with my disclaimer of these case-by-case determinations are left for the based upon my understanding of the rule, the language, and the intent, I don't believe that the hypothetical you proposed would run afoul of Guideline 3. If he said, Judge Fuentes said favorable things about my abilities at page 17 of this opinion, take a look, I think that's fine. It only runs afoul when you take that judicial opinion, that quote, or that excerpt out of context, because then you're giving them the thing, and why would anybody want to go look if it's right there? That's what it said. That's what the judge said. The judge said he was great. Why do I need to look at the context? But if you say, he said these great things about my opinion, about my abilities in this opinion, go take a look, then the consumer goes and sees why the judge said those great things. When New Jersey was considering adopting Guideline 3, I assume it looked at what other states are doing. Is there any other state that's adopted something akin or identical to Guideline 3? I do not know that off the top of my head here today. I can submit it in something in writing. Okay, that would be fine. Okay. Any other questions? I'm good. Thank you. Thank you. Thank you. Thank you. First of all, I think we've got some clarification of the state's position today, which we didn't really have before, based on their brief, which is that they're saying no matter what, you can't quote. And that makes it a restriction. The second thing is, I heard Ms. Scott say several times that you're not allowed to make comparative statements about your abilities under New Jersey ethics rules. It just isn't true. The committee on attorney advertising issued Opinion No. 15, which we cited to you in our initial brief, which allows client testimonials which would be making comparative statements about attorneys. The committee later adopted an Opinion 33 that took that back and said, you know what, we don't want you to make comparative statements. You can just say things like the attorney's nice, they answer the phone quickly, whatever. But then Opinion 33 has been thrown out. And as their Rule 30b-6 witness testified at a deposition, the governing opinion for attorneys right now in New Jersey is you can put client testimonials, even if they make comparative statements about the attorney's abilities, and those testimonials are all over the Internet in New Jersey. So her statement that you cannot make comparative statements about an attorney's abilities in New Jersey that will run afoul of the RPC is just wrong. When they were going in the process of adopting or putting the language together for Guideline 3, do you have any idea of what other states have similar guidelines? Yeah, like I said to you before, Judge Ambrose, I researched this even before we put this on the Internet, and I've never been able to find a state that has a similar provision. Most states rely on the analog to RPCs, whether it's the same numbers, the analog to RPC 7.1 and 7.2, which says in an attorney advertising you cannot make a false or misleading statement about the attorney's services. And that's another thing that Ms. Scott said that was absolutely incorrect. She said, when you asked her why do you need Guideline 3, she said, well, our committee can't enforce those other rules. That's absolutely wrong. The rules specifically empower the Committee on Attorney Advertising to enforce the rules that govern false and misleading statements in advertising. So if they thought those quotes were false and misleading, they could have brought ethics charges against me. They had full power to prosecute that. A couple just really quick points. You weren't hoping that happened, were you? No. And obviously that's why I took them off my site, because if I didn't take them off my site, they would have filed a motion to dismiss under a younger abstention, right? So the other thing is, this is where the Rubin v. Coors case I think is so significant. It's just not rational for them to be saying that the average consumer seeing the quotes is going to be so misled and so deceived, but when they read it in the opinion, if they're willing to slog through 40 pages of the opinion, somehow that's going to be okay, even though the rest of the opinion has absolutely nothing to do with the attorney's abilities. You know, if you've ever seen the transcript of a post-trial motion, it's all about the defendant's J&OV motion and so forth and so on. The amount of discussion about the attorney's abilities is a paragraph. And then this other thing, you know, well, they don't know how the judge got to the opinion, they don't know how the judge reached the opinion. You know, that's wrong under Ibn Izz and under Peel. Those courts say specifically, the fact that the consumer doesn't have all the information does not make it deceptive. The court specifically rejected the idea that the NBTA certified civil trial attorney designation was misleading just because your average consumer might not know what the NBTA is. And the court specifically rejected the idea in Ibn Izz that the certified financial planner designation was misleading because your average consumer might not know what that is. So the fact that there's not complete information about something does not make it misleading. If it were, then every advertisement on TV would have to go on for five hours. Thank you very much. I would like to ask counsel if you would have a transcript prepared. And you split the cost. I'm rich, Judge, I'll just pay for it. It was with some trepidation that I say this is a well-presented argument. And we'll take the matter under advisement.  Thank you.